UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TRACY D. PIKE,

                              Plaintiff,

                -vs-                                              14-CV-159-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

---

APPEARANCES:    LAW OFFICES OF KENNETH HILLER, PPLC (IDA M. COMERFORD, of Counsel), Amherst, New York, for Plaintiff.

                        WILLIAM J. HOCHUL, JR., United States Attorney (SUSAN JANE REISS, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

## **INTRODUCTION**

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated December 15, 2014 (Item 15).

Plaintiff Tracy Pike initiated this action on March 7, 2014, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 11, 13). For the following reasons, plaintiff's motion is granted,

and the Commissioner's motion is denied.

**BACKGROUND**

Plaintiff was born on September 8, 1959 (Tr. 180).[1] He filed an application for SSDI benefits on January 22, 2011, alleging disability due to impairments of the left and right shoulders, with an onset date of December 16, 2010 (Tr. 214). The application was denied administratively on May 13, 2011 (Tr. 60-63). Plaintiff then requested a hearing, which was held on March 6, 2012, before Administrative Law Judge ("ALJ") Michael W. Devlin (Tr. 24-50). Plaintiff appeared and testified at the hearing, and was represented by counsel. A vocational expert ("VE") also appeared and testified.

On June 27, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 10-18). Following the sequential evaluation process outlined in the Social Security Administration regulations (see 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (bilateral shoulder pain following multiple surgeries, right wrist fusion, and adjustment disorder) while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 12-13). The ALJ discussed the evidence in the record, including reports from treating and consultative medical sources, and determined that plaintiff was incapable of performing his past relevant work as an electrician (Tr. 16), and has the residual functional capacity ("RFC") to perform light work[2] with several specified

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner in this action.

[2] Light work involves lifting no more than 20 pounds occasionally, 10 pounds frequently, standing and/or walking for six hours in an eight-hour work day and sitting six hours in an eight-hour work day. See 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling (SSR) 83-10. If someone can perform light

exertional limitations (Tr. 13-16). Relying on the VE's testimony, the ALJ determined that plaintiff could perform jobs that exist in significant numbers in the national economy and thus has not been disabled within the meaning of the Act at any time since the alleged onset date through the date of the decision (Tr. 17-18).

The ALJ's decision became the final decision of the Commissioner on January 24, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-5), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ erred in his assessment of the medical opinion evidence. *See* Items 11-1, 14. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 13-1.

## DISCUSSION

I. **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

---

work, the Commissioner determines that they can also perform sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

(1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v.*

*Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who

had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c); *see also* §§ 404.1509 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a

listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and

citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

**III.     The ALJ's Disability Determination**

In this case, ALJ Devlin determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since December 16, 2010, the alleged onset date (Tr. 12). At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 12-13).

At step four, the ALJ discussed the medical evidence of record, including plaintiff's history of bilateral rotator cuff tears and shoulder surgeries in 1982, 2005, and 2011. He found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, his statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely credible" (Tr. 14). As for the medical opinion evidence, the ALJ gave great weight to the opinions of treating physician Dr. Ilya Voloshin, M.D. and consultative examiner Dr. Karl Eurenius, M.D. He accorded significant weight to the opinion of Christina Caldwell, Psy. D., a psychiatric consultative examiner, and limited weight to the opinions of Dr. Stephen Kates, M.D., a treating physician, treating Physician's Assistant Jayne Cooper, and medical consultant Dr. Dale (Tr. 16).

Based on his review of the evidence, the ALJ found that plaintiff had the RFC to perform light work, with certain additional functional limitations related to climbing, crawling,

crouching, and reaching. The ALJ found that plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, occasionally push and pull 20 pounds, but could rarely reach overhead or behind his back with either upper extremity (Tr. 13). Relying on the VE's testimony, the ALJ found that, given his age, education, work experience, and RFC, plaintiff could perform the positions of counter clerk and mail clerk, both unskilled light positions with a specific vocational preparation ("SVP") of 2 (Tr. 17).

### IV.     The Medical Opinion Evidence

Plaintiff argues that the ALJ erred in his assessment of the various medical opinions. In this regard, the Social Security regulations provide that the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, "[r]egardless of its source," including:

> (I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d. Cir. 2004) (citing 20 C.F.R. § 416.927(c); *see also* 20 C.F.R. § 404.1527(c)). The ALJ "does not have to explicitly walk through these factors," so long as the court can conclude that the ALJ "applied the substance" of the listed factors and provided "good reasons" for the weight given to the medical source's opinion." *Hall v. Colvin*, 37 F.Supp.2d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran*, 362 F.3d at 32).

### A. Dr. Kates

Plaintiff argues that the ALJ erred in his consideration of the opinion of his treating physician Dr. Stephen Kates. The "treating physician rule" requires the ALJ to give "controlling weight" to the opinion of a claimant's treating physician regarding "the nature and severity of [the claimant's] impairment(s) ... [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

Plaintiff began treating with Dr. Kates, an orthopedist, in August 2005 (Tr. 310). He underwent shoulder surgery on October 3, 2005 (Tr. 311). At that time, plaintiff was found to have a "massive, unrepairable rotator cuff tear" in his right shoulder (Tr. 309). Upon follow-up in 2006 and 2007, plaintiff complained of shoulder pain and exhibited limited range of motion and weakness (Tr. 306). In December 2010, plaintiff complained of pain in both shoulders, having recently injured the left shoulder in a fall (Tr. 292). Dr. Kates diagnosed "substantial rotator cuff tears on both shoulders." *Id.* He stated that plaintiff was totally disabled as of December 16, 2010. *Id.*

Plaintiff underwent left shoulder surgery on January 31, 2011. On April 12, 2011, Dr. Kates observed that plaintiff had a good result after left rotator cuff repair, but continuing pain in the right shoulder (Tr. 443). Dr. Kates stated that plaintiff "is unable to work in any capacity at this time ... [h]is disability status is total and I think this will end up being permanent." *Id.*

The ALJ considered the opinion of Dr. Kates, but gave it limited weight despite the long treating relationship (Tr. 16). The ALJ noted that while Dr. Kates found plaintiff unable

to return to his usual occupation as an electrician, he "did not provide a function-by-function assessment of the claimant's capabilities, which would be useful in determining the claimant's ability to perform other work." *Id.* Accordingly, the ALJ rejected Dr. Kates' opinion that plaintiff was totally disabled.

Plaintiff argues that the ALJ should have specifically requested further information from Dr. Kates. It is well settled that an ALJ has an affirmative duty to develop the administrative record during Social Security hearings, even where the claimant is, as in this case, represented by counsel. *See* 20 C.F.R. § 404.1512(e) (explaining that the Commissioner will attempt to retrieve the entire medical history from the claimant's treating sources rather than always seeking consultative examinations); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan,* 168 F.3d at 79 n. 5.

Here, the ALJ had plaintiff's complete medical history. He discussed plaintiff's history of shoulder surgeries and assessed the various medical opinions. At the hearing, the ALJ asked if the plaintiff wished to obtain a more detailed statement from Dr. Kates and held the record open for two weeks (Tr. 49). On March 22, 2012, plaintiff's attorney advised the ALJ that she would not be submitting any further evidence (Tr. 242). The regulations provide that the absence of a medical source statement setting forth what a claimant can and cannot do, exactly the information the ALJ found lacking in Dr. Kates' opinion, will not render a medical report incomplete. *See* 20 C.F.R. 416.913(b)(6). Under these circumstances, the ALJ was not required to recontact Dr. Kates for further information.

Additionally, the decision on the ultimate issue of disability is one reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(2); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative."). The ALJ was not required to accept Dr. Kates' conclusory statement that plaintiff is totally disabled. Accordingly, the court finds no error in the ALJ's consideration of the opinion of Dr. Kates. However, as the court finds that remand is necessary for other reasons that follow, the ALJ has an opportunity and should endeavor to obtain a specific RFC analysis from Dr. Kates.

### B. Dr. Voloshin

At the referral of Dr. Kates, plaintiff saw Dr. Ilya Voloshin at the Orthopedics Department of Strong Memorial Hospital in Rochester, New York, on January 4, 2011. At that time, an MRI demonstrated a "massive left shoulder rotator cuff tear" which was arthroscopically repaired on January 31, 2011 (Tr. 376). At a follow-up appointment on April 5, 2011, plaintiff showed good progress and near full range of motion in the left shoulder (Tr. 516). In September 2011, plaintiff had minimal left shoulder pain, but significant right shoulder pain and weakness (Tr. 545). Dr. Voloshin stated that plaintiff has "permanent restrictions on his right shoulder with no lifting greater than 10 pounds over his head." (Tr. 545-46).

The ALJ gave great weight to the opinion of Dr. Voloshin, whose treatment records showed that plaintiff made a "very good recovery" from the left shoulder surgery (Tr. 16).

However, the ALJ apparently disregarded the fact that plaintiff's progress was related to his left shoulder only, and that Dr. Voloshin opined that plaintiff could not lift more that 10 pounds overhead. In this regard, the ALJ seemed to "cherry pick" that aspect of Dr. Voloshin's report that supported the RFC for light work, but disregarded the specific restrictions imposed by Dr. Voloshin that would prevent the plaintiff from lifting more than 10 pounds. This inconsistent use of Dr. Voloshin's opinion, without any explanation by the ALJ, is insufficient to support his physical residual functional capacity assessment that plaintiff could perform light work. *See, Molina v. Colvin*, 2014 WL 3445335, *17 (S.D.N.Y. July 15, 2014); *see also Beck v. Colvin*, 2014 WL 1837611 at *13 (W.D.N.Y. May 8, 2014) ("The ALJ ignored the portions of [the doctor's] reports in which he strongly opines that if Plaintiff were placed in a full-time competitive work-environment, her depression and anxiety symptoms would worsen and she likely would decompensate. The ALJ improperly cherry-picked from [that doctor's] opinions only the information that purportedly favors a finding of no disability."); *Tim v. Colvin*, 2014 WL 838080 at *7 (N.D.N.Y. Mar. 4, 2014) ("[A]n administrative law judge may not 'cherry-pick' medical opinions that support his or her opinion while ignoring opinions that do not."). Accordingly, the court concludes that the ALJ failed to properly evaluate the medical opinion of Dr. Voloshin in connection with the RFC analysis. Upon remand, the Commissioner must address the totality of Dr. Voloshin's medical opinion.

### C. Dr. Eurenius

On April 11, 2011, plaintiff was examined by consultative physician Dr. Karl Eurenius. Dr. Eurenius found plaintiff unable to elevate his shoulders above 110 degrees

bilaterally (Tr. 407). He concluded that plaintiff was "currently limited in lifting or carrying with either arm due to shoulder pain. He is also limited in reaching or handling heavy objects or reaching behind his back or behind his head due to bilateral shoulder pain." *Id.*

The ALJ gave "great weight" to the opinion of Dr. Eurenius, finding it consistent with the examinations of plaintiff by Drs. Kates and Voloshin (Tr. 16). Inexplicably, however, the ALJ translated the opinion of Dr. Eurenius, that plaintiff was "limited in lifting or carrying with either arm due to shoulder pain . . . [and] limited in reaching or handling heavy objects," into an RFC determination that plaintiff could do light work, occasionally lifting up to 20 pounds. The vague and non-specific statements of limitations in the opinion of Dr. Eurenius are insufficient to serve as the proper basis for the ALJ's determination of plaintiff's RFC for light work. *See Ubiles v. Astrue,* 2012 WL 2572772, *11 (W.D.N.Y. July 2, 2012) (a vague statement regarding non-specific limitations cannot serve as an adequate basis for determining RFC). On the present record, the court cannot conclude that the ALJ's determination that plaintiff is capable of light work is supported by substantial evidence, and remand is required.

**D. Dr. Dale**

On April 21, 2011, Dr. J. Dale, a state review physician, reviewed the report of consultative examiner Dr. Eurenius. Dr. Dale found that plaintiff's medically determinable impairments prevent significant gainful activity, but that was not expected to last 12 months (Tr. 409). Additionally, Dr. Dale found that plaintiff has the RFC for light work with restricted overhead reaching bilaterally. *Id.*

The ALJ gave limited weight to Dr. Dale's opinion, finding Dr. Dale's conclusion that

plaintiff failed to meet the duration requirement inconsistent with the medical record (Tr. 16). However, in rejecting Dr. Dale's opinion regarding duration, the ALJ appeared to fully credit Dr. Dale's conclusion that plaintiff maintained the RFC for light work.[3]  Dr. Dale, as a consultative review physician, did not examine plaintiff, but merely reviewed the report of Dr. Eurenius and apparently based his conclusion on the examination of plaintiff by Dr. Eurenius.  Without any explanation, the ALJ appears to have adopted the RFC determination of Dr. Dale, an RFC that was based on the above-noted vague and insufficient statements of limitations contained in the opinion of Dr. Eurenius.  As the court cannot conclude that the RFC determination is based on substantial evidence, remand is required.

### E.  PA Cooper

On March 9, 2011, PA Jayne Cooper opined that plaintiff's bilateral rotator cuff tears "significantly limit his ability to perform gainful employment. He is limited in his ability to lift, carry, push/pull, and perform overhead use." (Tr. 397).  On March 7, 2012, she opined that plaintiff was "currently unable to work in any capacity and this is permanent. His disability status is total." (Tr. 548).

The ALJ gave limited weight to this opinion, finding that it was "not supported by the overall weight of the medical evidence." (Tr. 16).  While PA Cooper is not a treating physician, she is an "other source," whose opinion may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight. See 20 C.F.R. § 416.913(d)(1); *Genier v. Astrue,* 298 F. App'x 105, 108

---

[3] Other than the opinion of Dr. Dale, there is no other medical opinion in the record that supports an RFC finding for light work.

(2d Cir. 2008). Additionally, as stated above, the decision on the ultimate issue of disability is one reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(2).

The ALJ's consideration of the opinion of PA Cooper is problematic. Her opinion that the plaintiff is "limited in his ability to lift, carry, push/pull, and perform overhead use" is not inconsistent with the medical evidence and is reflected in the RFC determination. The ALJ appears to have rejected PA Cooper's ultimate conclusion of total disability, which is an issue reserved for the Commissioner. On remand, the ALJ should more fully explain what, if any, aspect of the opinion is accepted or rejected, so as to give the court sufficient information upon which to base its review, consistent with the applicable regulations. *See* 20 C.F.R. § 416.927(c); 20 C.F.R. § 404.1527(c)).

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 11) is granted, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. Defendant's motion for judgment on the pleadings (Item 13 ) is denied. The Clerk of the Court is directed to close this case.

So ordered.

              ____/s/ John T. Curtin_____
                 JOHN T. CURTIN
                United States District Judge

Dated:   March 18, 2015